**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL NO. 1:15CV243-RJC-DSC**

| | |
|---|---|
| ROBIN P. NANCE,       )<br>            Plaintiff,   )<br>                               )<br>        vs.                  )<br>                               )<br>CAROLYN W. COLVIN,  )<br>Commissioner of Social )<br>Security Administration,  )<br>            Defendant.   )<br>_____ ) | **MEMORANDUM AND RECOMMENDATION** |

**THIS MATTER** is before the Court on Plaintiff's "Motion for Summary Judgment" (document #8) and Defendant's "Motion for Summary Judgment" (document #9), as well as the parties' briefs and submissions.

This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and these Motions are now ripe for disposition.

Having considered the written arguments, administrative record, and applicable authority, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be denied; that Defendant's Motion for Summary Judgment be granted; and that the Commissioner's decision be affirmed.

## I. PROCEDURAL HISTORY

On September 15, 2011, Plaintiff filed an application for Disability Insurance Benefits ("DIB") alleging that she became disabled on October 30, 2010. (Tr. 106, 193-96). The application was denied initially and upon reconsideration. (Tr. 127-35, 137-43). Plaintiff requested a hearing which was held on November 21, 2013. (Tr. 50-74).

1

On May 13, 2014, the Administrative Law Judge ("ALJ") determined that Plaintiff was not disabled through her date last insured of December 31, 2013. (Tr. 26-48). The ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (Tr. 31). The ALJ also found that Plaintiff suffered from degenerative disc disease with radiculopathy, spinal stenosis, bipolar disorder, anxiety, multilevel spondylosis, depression, and irritable bowel syndrome (Tr. 31), but did not meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 33-38). The ALJ then found that Plaintiff retained the Residual Functional Capacity ("RFC")[1] to perform light work,[2] except that she:

> must be allowed to alternate between sitting and standing up to two times each hour; could occasionally climb, balance, stoop, kneel, crouch, or crawl; could follow short, simple, not detailed instructions and perform routine tasks; should avoid work requiring a production rate or demand pace; could sustain attention and concentration for two hours at a time; should have only occasional contact or interaction with the public; should avoid work environments dealing with crisis situations, complex decision making, or constant changes in a routine setting, and will need one to two additional five-minute rest breaks.

(Tr. 38). The ALJ found that Plaintiff could not perform her past relevant work. (Tr. 41).

The ALJ shifted the burden to the Secretary to show the existence of other jobs in the national economy that Plaintiff could perform. In response to a hypothetical that factored in the above limitations, a Vocational Expert ("V.E.") identified jobs as a shipping and receiving weigher, electronic worker, and laundry folder that Plaintiff could perform. The V.E. testified that

---

[1]The Social Security Regulations define "Residual Functional Capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] Residual Functional Capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

[2]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

more than 3,700 of those jobs were available locally and more than 120,000 were available nationally. (Tr. 42). The ALJ concluded that the V.E.'s testimony was consistent with the Dictionary of Occupational Titles ("DOT"). Id.

Based upon this testimony, the ALJ found that there were a significant number of jobs in the local and national economy that Plaintiff could perform. (Tr. 42). Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 43).

On August 27, 2015, the Appeals Council denied Plaintiff's Request for Review. (Tr. 1-7, 24).

Plaintiff filed the present action on October 26, 2015. She assigns error to the ALJ's evaluations of opinions by Doctors Terry Ledford, Loretta A. Dickson, and Tovah M. Wax. Plaintiff's Brief at 4-16 (document #8). She also assigns error to the ALJ's evaluation of her credibility and RFC. Id. at 16-20.

The parties' Motions are ripe for disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION OF CLAIM

The question before the ALJ was whether Plaintiff became disabled[3] as that term of art is

---

[3]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .
Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

4

defined for Social Security purposes prior to her date last insured of December 31, 2013. It is not enough for a claimant to show that she suffered from severe medical conditions or impairments which later became disabling. The subject medical conditions must have become disabling prior to the date last insured. Harrah v. Richardson, 446 F.2d 1, 2 (4th Cir. 1971) (no "manifest error in the record of the prior administrative proceedings" where Plaintiff's conditions did not become disabling until after the expiration of his insured status).

The ALJ is solely responsible for assessing a claimant's RFC. 20 C.F.R. §§ 404.1546(c) & 416.946(c). In making that assessment, the ALJ must consider the functional limitations resulting from the claimant's medically determinable impairments. SSR96-8p at *2. However, it is the claimant's burden to establish her RFC by demonstrating how those impairments impact her functioning. See 20 C.F.R. §§404.1512(c) & 416.912(c); see also, e.g., Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("[t]he burden of persuasion . . . to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five"); Plummer v. Astrue, No. 5:11-cv-00006, 2011 WL 7938431, at *5 (W.D.N.C. Sept. 26, 2011) (Memorandum and Recommendation) ("[t]he claimant bears the burden of providing evidence establishing the degree to which her impairments limit her RFC") (citing Stormo), adopted, 2012 WL 1858844 (May 22, 2102), aff'd, 487 F. App'x 795 (4th Cir. Nov. 6, 2012). The ALJ's RFC determination here is supported by substantial evidence including the opinions from Doctors Loretta Dickson, Shana James, and A.K. Goel, Plaintiff's own testimony, a third party function report from James Nance, and Plaintiff's treatment records. (Tr. 32-35, 38-41).

The ALJ considered Dr. James' consultative examination opinion. (Tr. 32, 337-39). Dr. James noted that Plaintiff had a normal gait, 5/5 motor strength in her upper extremities, 5/5 bilateral hand grip and negative straight leg raising both sitting and supine. (Tr. 32, 338).

5

Plaintiff's forward flexion, extension, lateral flexion, and rotation in the cervical and thoracolumbar spine were within normal limits. (Tr. 32, 339). Plaintiff's shoulder forward elevation, backward elevation, abduction, adduction, internal rotation, and external rotation were within normal limits. (Tr. 32, 339). Plaintiff's hip flexion, extension, abduction, adduction, internal rotation, and external rotation were normal bilaterally (Tr. 32, 339). The range of motion in the small joints of her hands were normal bilaterally, and bilateral knee flexion and extension were normal. (Tr. 32, 339). She had no deficits in sensation to light touch. (Tr. 32, 339). Dr. James did not assess Plaintiff with any specific work related limitations. She did provide a functional assessment noting that Plaintiff had mild reproducible upper thoracic vertebral tenderness with paraspinal muscle spasms and tenderness of the cervical and upper thoracic area. Dr. James also stated that Plaintiff's back symptoms were aggravated by pushing, pulling, lifting, and reaching overhead. (Tr. 32, 339).

The ALJ also considered the report from Dr. Goel, a non-examining State agency medical consultant. Dr. Goel opined that Plaintiff was capable of work at the medium level of exertion, with occasional climbing of ladders/ropes/scaffolds, stooping, and crouching. (Tr. 41, 116-18). However, the ALJ placed greater restrictions on Plaintiff's RFC - limiting her to light work and the nonexertional limitations quoted above.

The ALJ accorded some weight to a third party function report from Plaintiff's husband, James Nance, who stated that Plaintiff had no problems with personal care, needed no reminders for medications, prepared her own meals, washed and folded clothes with help from a neighbor, drove, and managed her own finances. (Tr. 40, 227-34).

Plaintiff argues that the ALJ erred in relying on the "opinions of the consultative physicians," because she stated earlier that she gave little weight to the opinions from the only

consultative physician to review the record. (Pl. Br. 14-16; Tr. 41). The opinion Plaintiff references is from Dr. Goel and not from a consultative physician. (Tr. 41). Furthermore, Plaintiff does not argue that she had any limitations in excess of those identified in the RFC.

Plaintiff challenges whether the ALJ properly evaluated the opinions from treating physicians Doctors Ledford and Dickson and State agency psychological consultant Dr. Wax. The Fourth Circuit has held that a treating physician's opinion need not be afforded controlling weight. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). A treating physician's opinion on the nature and severity of an alleged impairment is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) (2002); and Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Therefore, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro, 270 F.3d. at 178 (citing Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996)).

On March 8, 2012, Dr. Ledford completed a psychiatric impairment questionnaire. (Tr. 363-70). He opined that Plaintiff had no limitation in her ability to remember locations and work-like procedures, carry out simple one- or two-step instructions, set realistic goals or make plans independently. (Tr. 366, 368). He found that Plaintiff was mildly limited in her ability to understand and remember one or two-step instructions and make simple work-related decisions. (Tr. 366-67). Dr. Ledford opined that Plaintiff was moderately limited in her ability to carry out detailed instructions, perform activities within a schedule, maintain regular attendance and be punctual within customary tolerance, sustain ordinary routine without supervision, interact appropriately with the general public, accept instructions and respond appropriately to criticism

from supervisors, get along with co-workers or peers without distracting them, and maintain socially appropriate behavior (Tr. 366-67). He opined that Plaintiff was markedly limited in her ability to understand and remember detailed instructions, maintain attention and concentration for extended periods, work in coordination with or proximity to others without being distracted by them, complete a normal workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, and respond appropriately to changes in the work setting, (Tr. 366-67). Dr. Ledford further opined that Plaintiff was incapable of even low stress work, and was likely to be absent more than three times a month. He noted that she experienced episodes of deterioration or decompensation in work settings which caused her to withdraw or experience exacerbation of her symptoms. (Tr. 368-70).

The ALJ properly gave some weight to Dr. Ledford's opinions regarding Plaintiff's mild and moderate limitations and little weight to Dr. Ledford's opinions regarding her marked limitations, decompensation in a work setting, absenteeism, and ability to sustain gainful employment. (Tr. 35). The ALJ noted that Plaintiff had decreased panic attacks and improved mood. She was subject to family and situational stressors when her depression worsened. (Tr. 35, 354, 437-41, 443, 445, 503-04, 506). The ALJ further considered that Plaintiff got along with others and had never been fired because of problems with supervisors or co-workers. This is consistent with her testimony that she stopped working at Sonoco due to family stressors. (Tr. 35, 56-57, 233). The ALJ also noted Plaintiff's report that Lamictal helped with her depression. This is consistent with her Global Assessment of Functioning (GAF) score improving from 55 on August 4, 2011 to 60-65 on July 27, 2012.[4] (Tr. 35, 269, 440, 444, 515, 517). The ALJ cited the

---

[4]According to *The Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)*, a GAF score between 51 and 60 indicates "Moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-

improvement in GAF score as corroborating Plaintiff's statement that Lamictal helped her depression. The ALJ's discussion of Plaintiff's GAF scores is supported by substantial evidence.

The ALJ considered that many of Plaintiff's reports to her treatment providers reflected problems with family and situational stressors as opposed to depression or anxiety that precluded her from working. (Tr. 35, 276, 279, 437-40, 442-45, 520-504, 553).

Substantial evidence supports the ALJ's finding that Dr. Ledford's opinion was entitled to some weight with regard to Plaintiff's mild and moderate limitations and little weight with regard to any marked limitations, decompensation, absenteeism, or inability to work.

On November 3, 2011, Dr. Dickson, Plaintiff's treating physician, completed a multiple impairment questionnaire. (Tr. 291-98). She opined that Plaintiff could sit for two hours and stand/walk for three hours in an eight-hour workday, not sit continuously and would need to move around every thirty minutes, occasionally lift ten to twenty pounds but never more than twenty pounds, occasionally carry five to ten pounds but never more than ten pounds, perform minimal fine manipulation, and not lift above her head. (Tr. 293-94). Dr. Dickson opined that Plaintiff had marked limitations in grasping, turning, and twisting objects with her right hand and moderate limitations with her left hand. (Tr. 294). Dr. Dickson found that Plaintiff had moderate limitations using her hands for fine manipulation. She had minimal to moderate limitation in reaching with her arms. (Tr. 295). Dr. Dickson further opined that Plaintiff's symptoms would worsen in a competitive work environment. She stated that Plaintiff could not perform work on a sustained basis, and that her pain and fatigue were severe enough to interfere constantly with attention and

---

workers." A GAF score between 61 and 70 indicates "Some mild symptoms (e.g. depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g. occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." American Psychiatric Association, *DSM-IV-TR* 34 (4th ed. rev., 2000).

concentration. Plaintiff was capable of tolerating low stress work, and would need to take unscheduled work breaks at least hourly. She was likely to be absent from work more than three times per month, and was not capable of pushing, pulling, kneeling, or bending. (Tr. 296-97).

The ALJ properly gave some weight to Dr. Dickson's opinions. (Tr. 40). The ALJ accepted Dr. Dickson's opinion regarding Plaintiff's need to alternate between sitting and standing up to two times each hour and her ability to lift twenty pounds occasionally (Tr. 38, 40, 293-94). However, the ALJ found that Plaintiff could walk and/or stand for six hours in an eight-hour workday and occasionally perform postural functions. (Tr. 38, 40, 293-94). The ALJ also found that Plaintiff required only one to two additional five-minute rest breaks. (Tr. 38, 40).

The ALJ gave the remainder of Dr. Dickson's opinion little weight because there was no electro-diagnostic evidence of bilateral radiculopathy, plexopathy, myopathy, or overt peripheral neuropathy. (Tr. 40, 520). The ALJ noted Plaintiff's report on February 22, 2012 that she "has been able to walk further, which she was not able to do before." (Tr. 40, 375). The ALJ considered that the electromyogram (EMG) of Plaintiff's lower bilateral extremities was normal, manual muscle testing of the bilateral lower limbs was 5/5, and she had a slightly reduced extensor hallucis longus (EHL) of 4/5, referencing muscle in the great toe. (Tr. 40, 519). The ALJ noted that Plaintiff's range of motion in the small joints of her hands was normal bilaterally, her hip flexion, extension, abduction, adduction, internal rotation, and external rotation were normal bilaterally, her knee flexion and extension were within normal limits bilaterally, her ankle dorsiflexion and plantar flexion were normal bilaterally, and her cervical spine, forward flexion, extension, lateral flexion, and rotation were within normal limits. (Tr. 40, 339). This evidence supports lesser restrictions in standing, walking, postural limitations, manipulative limitations, and breaks than those assessed by Dr. Dickson.

The ALJ considered that Dr. Dickson's physical exams revealed spasms and tenderness in the right upper back, trapezius, and neck but were otherwise normal. (Tr. 33, 304, 319, 344, 347, 407). The ALJ discussed the records from Carolina Center for Advanced Management of Pain where Plaintiff complained of neck and low back pain. Her low back pain radiated to her leg, and she suffered right upper extremity pain and weakness. (Tr. 33, 444). The ALJ noted that physical exams were normal, except for decreased cervical range of motion turning to the left, tenderness to palpation, mild right side cervical pain and tenderness, and thoracolumbar pain with decreased extension. (Tr. 33, 467). The ALJ considered that the MRI of Plaintiff's lumbar and cervical spine revealed multilevel degenerative spondylosis at the C3-C4 level, moderate disc desiccation at L2-L3 and L3-L4, diffuse disc protrusion, and central spinal stenosis without nerve root impingement. (Tr. 33, 393-945). The ALJ also noted that L4-L5 had moderate disc desiccation, diffuse disc protrusion, and facet joint arthropathy. (Tr. 33, 394-95).

The ALJ considered Plaintiff's report on August 25, 2011 that her "pain went from 80 down to 18" (presumably on a scale of 1 to 100). (Tr. 39, 40, 326, 375). The ALJ noted that Plaintiff was more active following an epidural steroid injection at L4-L5. She indicated that medications helped her pain, and reported moderate improvement in her pain after her first epidural at L4-L6. (Tr. 39, 481, 530, 541). The ALJ acknowledged the abnormal findings in the record and adequately explained that the evidence did not support the disabling limitations assessed by Dr. Dickson.

On June 12, 2012, State agency psychological consultant Dr. Wax opined that Plaintiff had mild restrictions in activities of daily living and moderate difficulties in social functioning and in concentration, persistence, or pace. (Tr. 114-15). Dr. Wax found that Plaintiff was not significantly limited in her ability to carry out short and simple instructions, maintain attention and

concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, sustain an ordinary routine without special supervision, make simple work-related decisions, ask simple questions or request assistance, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, maintain socially appropriate behavior and adhere to the basic standards of neatness and cleanliness, be aware of normal hazards and take appropriate precautions, travel to unfamiliar places or use public transportation, and set realistic goals or make plans independently of others. (Tr. 118-19). Dr. Wax opined that Plaintiff was moderately limited in her ability to carry out detailed instructions, work in coordination with or in proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, and respond appropriately to changes in the work setting. (Tr. 118-19).

The ALJ did give some weight to Dr. Wax's opinions. (Tr. 37). The ALJ concurred with Dr. Wax that Plaintiff could follow short, simple, instructions and perform routine tasks, have occasional interaction with the public, and should avoid work environments dealing with constant changes in a routine setting. (Tr. 38, 119). However, the ALJ found that Plaintiff was not significantly limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms or perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 37). The ALJ considered Plaintiff's testimony that she was always a good worker, and able to follow the appropriate protocol when she needed time off due to personal issues. (Tr. 37, 56-57). The ALJ also noted that "an unreasonable" number and length of rest breaks as assessed by Dr. Wax was vague. (Tr. 37).

12

The regulations provide that "State agency medical and psychological consultants . . . are highly qualified physicians [and] psychologists . . . who are also experts in Social Security disability evaluation." 20 C.F.R. § 404. 1527(e)(2)(i). An ALJ gives weight to State agency opinions based upon such factors as the supportability of the opinion in the evidence including any evidence that was not before the State agency, the consistency of the opinion with the record as a whole, and any explanation for the opinion provided by the State agency consultant. Social Security Ruling (SSR) 96-6p, 1996 WL 374180, at *2 (S.S.A. 1996).

Dr. Wax had access to records that the treating sources did not. Specifically, Dr. Wax reviewed the opinion from Ms. Coates, dated May 30, 2012, the third party function report from Plaintiff's husband dated December 24, 2011, and treatment records from Woodridge Psychological Associates and Park Ridge Psychiatry. (Tr. 113, 227-34, 265-69, 271, 282, 435-36, 452-55).

The later evidence of Plaintiff's treatment is consistent with the opinions from Dr. Wax. On October 22, 2012, her mood was improved and described as "good." (Tr. 553). She had full memory recall, her thought processes were coherent and logical, and she had fair insight with good judgment, attention span and concentration. (Tr. 553). Although Dr. Wax did not review the evidence that was developed later, the ALJ considered it. (Tr. 36-38). The ALJ properly found that Plaintiff could follow short, simple, instructions and perform routine tasks, should avoid work requiring a production rate or demand pace, could sustain attention and concentration for two hours at a time, should have only occasional contact or interaction with the public, should avoid work environments dealing with crisis situations, complex decision making, or constant changes in a routine setting, and would need one to two additional five-minute breaks. (Tr. 38). The ALJ properly analyzed Dr. Wax's opinion giving it some weight, and Plaintiff's argument to the

contrary is without merit.

Plaintiff assigns error to the ALJ's credibility determination. A review of the ALJ's decision reveals that her credibility determination is supported by substantial evidence.

The determination of whether a person is disabled by non-exertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996), citing 20 C.F.R. § 416.929(b); and § 404.1529(b); 42 U.S.C. § 423(d)(5)(A). If there is such evidence, then the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [her] ability to work." Id. at 595, citing 20 C.F.R. § 416.929(c)(1); and § 404.1529(c)(1). The regulations provide that this evaluation must take into account:

> not only the claimant's statements about his or her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Craig, 76 F.3d at 595 (citations omitted).

The record contains evidence of Plaintiff's degenerative disc disease with radiculopathy, spinal stenosis, bipolar disorder, anxiety, multilevel spondylosis, depression, and irritable bowel syndrome – which could be expected to produce some of her symptoms. Accordingly, the ALJ found that Plaintiff met the first prong of the test. The ALJ then determined that Plaintiff's subjective complaints were not consistent with the objective evidence in the record. 20 C.F.R. § 404.1529(a) ("In determining whether you are disabled, we consider all your symptoms,

including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.") The ALJ is responsible for making credibility determinations and resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The ALJ is accorded deference with respect to determinations of a claimant's credibility. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir.1984). Indeed, "[b]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Id.

The ALJ considered Plaintiff's testimony that she had right arm pain radiating to her neck and down her backside, pain in her mid-back that felt like pressure, and low back pain radiating to her knees. (Tr. 38, 61). The ALJ discussed Plaintiff's testimony that she attempted to relieve her pain with Flexeril, a TENS unit, heat, and ice. (Tr. 38, 58, 66). The ALJ noted Plaintiff's testimony that her daily activities included watching television and reading. (Tr. 38, 66). The ALJ also considered Plaintiff's testimony that she did household chores but had to take a break after twenty or thirty minutes, and that the most she could lift was a gallon of milk. (Tr. 38, 59, 66-67).

The ALJ found that Plaintiff had severe impairments that could give rise to the symptoms she described throughout the disability application process. (Tr. 39). However, the ALJ went on to find that Plaintiff's testimony was not entirely credible. Id.

In discounting this subjective evidence, the ALJ considered that an MRI of Plaintiff's lumbar spine revealed no nerve root impingement. (Tr. 39, 393-95). The ALJ noted that Plaintiff was more active following an epidural steroid injection at L4-L5. (Tr. 39, 481). The ALJ considered that Plaintiff's forward flexion, extension, lateral flexion and rotation in her cervical and thoracolumbar spine were within normal limits, and her forward elevation, backward elevation, abduction, adduction, internal rotation, and external rotation were normal bilaterally in

her shoulders. (Tr. 39, 339). The ALJ also noted that Plaintiff endorsed improvement in her symptoms on multiple occasions and reported on August 25, 2011 that her "pain went from 80 down to 18" (presumably on a scale of 1 to 100). (Tr. 39, 326). The ALJ considered Plaintiff's testimony that she did yard work once every other week or three weeks, suggesting an improvement in her pain and functional limitations. (Tr. 39, 67, 230). She had previously reported pain when doing yard work. The ALJ considered Plaintiff's report that medications helped her pain and improved her quality of life and that she felt moderate improvement in her pain after her first epidural at L4-L6. (Tr. 39, 481, 530, 541, 550). The ALJ noted that Plaintiff did not testify that she needed assistance ambulating and that her husband indicated she could walk one hundred feet before she needed to stop and rest. (Tr. 39, 50-74, 232). The ALJ further noted that she had a normal EMG study, manual muscle testing of the bilateral lower limbs was 5/5, and she had a slightly reduced EHL of 4/5. (Tr. 39, 519). The ALJ also considered that there was no electrodiagnostic evidence of bilateral radiculopathy, plexopathy, myopathy, or overt peripheral neuropathy. (Tr. 39, 520).

The ALJ noted that when asked whether she could focus on television, Plaintiff testified that she paused the television to get up, move around and catch up on cleaning, but had no problems focusing on the program she was watching. (Tr. 34, 65). The ALJ considered that Plaintiff did not need reminders to take medications, and handled changes in her routine. Her husband had not noticed any unusual behaviors or fears. (Tr. 34, 229, 233). The ALJ considered that Plaintiff's attention and concentration were good or normal on several occasions. (Tr. 34, 268, 271, 311, 553). The ALJ also considered that Plaintiff did not have any inpatient psychiatric hospitalizations. (Tr. 34, 266). The ALJ noted that Plaintiff was going through family and situational stressors when she reported increased depression. (Tr. 35, 437-41, 443, 445, 503-04).

16

The ALJ considered that Plaintiff was never fired or laid off from a job because of problems in getting along with others. (Tr. 35, 233). The ALJ noted that Lamictal helped with her depression symptoms. (Tr. 35, 440, 444). Plaintiff's lowest GAF was 55 but improved to 60-65. (Tr. 35, 517). This substantial evidence supports the ALJ's finding that Plaintiff's subjective complaints were not fully credible.

Although the medical records establish that Plaintiff experienced symptoms to some extent, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." Seacrist, 538 F.2d at 1056-57.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles v. Shalala, 29 F.3d 918, 923 (citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of the record and the hearing testimony, and her ultimate determination that Plaintiff was not disabled.

## IV. RECOMMENDATIONS

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion for Summary Judgment" (document #8) be **DENIED**; that Defendant's "Motion for Summary Judgment" (document #9) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED.**

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections

to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Robert J. Conrad, Jr.

**SO RECOMMENDED AND ORDERED**.

Signed: June 23, 2016

David S. Cayer
United States Magistrate Judge